**In re James Robert WINDERS, Debtor.**

**Bonnie S. WINDERS, Plaintiff,**

v.

**James Robert WINDERS, Defendant.**

**Bankruptcy No. 85–01248D.**
**Adv. No. 85–0349D.**

United States Bankruptcy Court,
N.D. Iowa.

May 14, 1986.

Russell A. Neuwoehner, Dubuque, Iowa, for plaintiff.

Peter J. Klauer, Dubuque, Iowa, for defendant/debtor.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge, sitting by designation.

The dischargeability question raised in this adversary proceeding under Bankruptcy Code § 523(a)(5) involves the recurrent problem of how to characterize obligations under a divorce decree when the "support" obligation in the decree was obviously fixed at an amount lower than it otherwise would have been had the parties and the divorce court been cognizant *at the time of the decree* that the family home awarded to the wife for shelter for herself and the children in fact had higher effective mortgage lien obligations than was assumed by the parties and the court. I have previously dealt with a similar question in the case of *In re Ploski*, 44 B.R. 911 (Bankr.N.H.1984).

In the present case the evidence establishes that the plaintiff wife and defendant-debtor husband agreed initially on a $100 weekly support obligation but the wife eventually agreed to reduce this amount to $60 weekly in consideration of the husband's assuming all obligations as to a lounge and bar business that had failed and was being liquidated.

The $60 figure was used in the "Stipulation and Agreement" executed by the parties and approved and incorporated into a divorce decree entered by the Dubuque District Court of August 3, 1984. The stipulation recites that the family home will be awarded to the wife "subject to the existing mortgage with Clinton Federal Savings & Loan Association." The stipulation further provides that the husband will be awarded "all right, title and interest in and to the business known as 'The Finale', located at 1701 Central Avenue, Dubuque, Iowa including all equipment, inventory, receivables, insurance refunds, bond refunds and other assets, subject to any and all existing indebtedness thereon, including, but not limited to, a secured loan with Dubuque Bank & Trust Company."

The divorce decree, as indicated above, specifically incorporates the term of the

stipulation between the parties and provides that the husband shall deed the real property comprising the family home to the wife and that she is awarded the home "subject to the payment of the existing *mortgage* thereon." (Emphasis supplied)

It is clear as crystal that nobody during the time of the divorce decree was focusing on the second mortgage lien against the family home, arising from the secured debt financing for the Finale bar, as a real threat to the wife's continued occupancy of the family home. The husband repeatedly promised and assured the wife that he was assuming and would pay all the obligations arising from the bar business. He also assured her that the value of the remaining inventory, furnishings and equipment to be sold would be more than enough to cover the remaining debt to the Dubuque Bank.

The wife testified at the dischargeability hearing before this court. The husband did not. I find the wife's testimony credible that she was promised that she would be able to keep the family home free of any obligations relating to the bar business and that this was one of the reasons she agreed to a support level of $60 rather than $100 weekly for her minor children. I also find as credible her further testimony that as of the time of the divorce decree she could not have afforded to continue to live in the family home, with the support payments of only $60 weekly, if she also had to absorb the liability to make the $615 monthly payments due on the Dubuque Bank debt from the bar business.

Notwithstanding the husband's promises and representations the Dubuque Bank debt was not paid off, either in monthly payments or by the final liquidation of the bar assets, and on October 19, 1984 the Bank obtained a decree of foreclosure on the real property comprising the family home now occupied by the ex-wife and her children for a $5,920.56 deficiency amount on the secured debt.

The debtor filed his Chapter 7 bankruptcy petition on June 4, 1985. The ex-wife filed the pending "Complaint to Determine Dischargeability of Debt" within the required deadline on September 5, 1985. The complaint not only asked a determination that the $60 weekly support payments required by the divorce decree are nondischargeable, which is conceded by the debtor-defendant, but also asserts:

4. That in addition to the award of child support set out above, said Decree of Dissolution of Marriage further provided that the Defendant assume and pay certain debts and obligations of the parties, including indebtedness to Dubuque Bank & Trust Company, Thorp Finance, Louisburg Garage, Vanderloo, Haupert and White Veterinarians, P.C., Fireside Credit, and the balance of a business loan payable to Robert Burdick, Jr. It is Plaintiff's understanding that several of said debts have apparently not been paid, and are scheduled as debts in this bankruptcy proceeding.

5. The Defendant's obligation to assume and pay the debts referred to in the preceding paragraph are in the nature of maintenance and support of the Plaintiff, and were taken into consideration in determining the amount of child support to be paid by the Defendant, as the Plaintiff is without sufficient funds to pay said obligations on her own.

\* \* \* \* \* \*

WHEREFORE, Plaintiff prays that upon hearing the Court determine that the above referred debts and obligations are exempt from discharge for the reasons set forth above.

The evidence submitted by the plaintiff at trial was directed solely to the Defendant's obligation under the divorce decree to pay the Dubuque Bank debt. There is no evidence before the court which would justify recharacterization of the obligations on the other debts as being in the nature of "support" within the meaning of § 523(a)(5) of the Bankruptcy Code. The court accordingly determines the other debts listed, and the defendant's obligation to pay the same under the divorce decree, are dischargeable and discharged by this bankruptcy proceeding.

This leave for determination whether the husband's obligation to pay off the Dubuque Bank secured debt, in effect to save harmless the wife from that obligation, is nondischargeable as being in the nature of a "support" obligation. The amount of that obligation has now been liquidated to the $5,920.56 amount as of the October 19, 1984 foreclosure judgment date.

It is well-established that the question as to what constitutes alimony, maintenance or support, and any recharacterization of the same for § 523 purposes, is to be determined under the bankruptcy laws and not the state laws. 3 *Collier on Bankruptcy*, 15th Ed., § 523.15(1), pp. 523–110 (1984). The Bankruptcy Court does start with the general statutes and case decisions relating to divorce proceedings under the particular state law in fashioning a context within which to reach its own decision under the federal § 523(a)(5) dischargeability standards. *In re Ploski*, supra, at p. 913.

In the present case I conclude that the obligation to pay off the Dubuque Bank lien against the family home was to some extent in lieu of increasing the monthly support payments for the simple reason that "support" of the debtor's children at a minimum requires providing a roof over their heads and the evidence is uncontroverted that the wife would not have been able to afford to keep the family home if she had to make the additional Dubuque Bank payment out of her own pocket.

What is not clear however is whether the divorce court would have required the debtor to make the entire $615 monthly payment indefinitely, or a lump sum of $5,920.56, for that purpose if it had realized that the Dubuque Bank debt could not be paid out of the bar assets granted the debtor by the divorce decree. It is conceivable that the divorce court might have determined, considering the entire circumstances of the husband and wife, that more modest housing might have to be obtained.

This court has no way of knowing what the divorce court might have done, or would have done, had these circumstances been brought fully to its attention. Accordingly, there is no basis to recharacterize the *entire* Dubuque Bank obligation as "support" on the record before me. There is a basis to recharacterize so much of that obligation as would be equivalent to a $40 a week increase in the weekly support payments due the wife under the decree. Accordingly, the wife is hereby determined to have a total obligation from the husband arising from the divorce decree in the amount of $100 weekly for the support of the children which is a nondischargeable obligation under § 523(a)(5) of the Bankruptcy Code.

The court notes finally that under Iowa Law the setting of the debtor's obligation to provide for the support of his children is never fixed in any final sense and that that question can always be reopened by an appropriate modification proceeding to be brought by the wife in the state court due to "changed circumstances." *Iowa Code*, § 598.21(8).

The filing by the husband in bankruptcy, and the resulting discharge of some of the husband's obligations under the divorce decree, may qualify as such a changed circumstance to the extent it impacts upon the wife's financial condition. I therefore leave to the state court any further questions as to the proper level of support this debtor should provide for his children now that he has received his "fresh start" by his bankruptcy discharge. I do not believe that the "fresh start" contemplated by the federal Bankruptcy Code has anything to do with his ongoing responsibilities to provide for the support of his children in accordance with the family law and social policies of the State of Iowa.

## FINAL JUDGMENT

This court having tried this adversary proceeding and having entered its findings and conclusions by its separate Memorandum Opinion entered this date; and the court being fully advised in the premises, it is accordingly

ORDERED, ADJUDGED and DECREED as follows:

1. All obligations imposed upon the defendant, James Robert Winders, by virtue of the "Stipulation and Agreement" entered into by the parties on August 2, 1984, as incorporated by reference into the Judgment and Decree of Divorce entered on August 3, 1984 by the District Court of Iowa In And For Dubuque County in Case No. D.M.No.4891, are hereby determined to be nondischargeable in bankruptcy; with the exception of the requirement in paragraph 2 of the aforesaid Stipulation and Agreement providing for $60 weekly payments by the defendant for the support of his minor children; and with the further exception of a $40 weekly payment obligation by the defendant for a like period involving said support payments in accordance with the foregoing Memorandum Opinion of this court.