In re Peter A. JOHNSON, Debtor.

Cathy R. COE, Plaintiff,

v.

Peter A. JOHNSON, Defendant.

Bankruptcy No. 89–1125.
Adv. No. 91–149.

United States Bankruptcy Court,
D. New Hampshire.

July 24, 1992.

Edwinna C. Vanderzanden, McNeill, Taylor & Dolan, Dover, N.H., for plaintiff.

Kenneth E. Churbuck, Nashua, N.H., for defendant, debtor.

Dennis Bezanson, South Portland, Me., Chapter 7 Trustee.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

This adversary proceeding came on for hearing before the Court on March 6, 1992 regarding the parties' cross-motions for summary judgment on plaintiff's complaint for a determination of the dischargeability of certain debts and obligations owing by the defendant-debtor and relating to a certain divorce proceeding that culminated in a decree of divorce entered by the Hillsborough County Superior Court, State of New Hampshire, on February 10, 1988.[1] The precise issue before the Court is whether a debt obligation imposed by the Divorce Decree was or was not in the nature of a "maintenance" or "support" obligation rendered non-dischargeable by virtue of section 523(a)(5) of the Bankruptcy Code. For the reasons set forth below, I find that the obligation is in the nature of "maintenance" or "support" and that it is therefore non-dischargeable.

1. By Order dated October 31, 1991, this Court dismissed Counts 1 and 2 of the Complaint. Accordingly, only the referenced issue, regard-

## FACTS

The defendant-debtor, Peter A. Johnson, and the plaintiff, Cathy R. Coe, were married in December of 1976. There are no children born of this marriage. During the course of the marriage, the parties jointly acquired title to four parcels of real estate: (1) A marital home in Hollis, New Hampshire; (2) & (3) A ski lodge and abutting acreage of approximately 50 acres in Dixville Notch and Colebrook, New Hampshire (hereinafter referred to as the "Notch House" and the "McLean property", respectively); and (4) A summer home in Edgartown, Massachusetts.

The parties separated for the first time in July of 1985, attempted a reconciliation in April of 1986, and separated again in April of 1987. During the original separation, in August of 1985, Peter Johnson filed a decree for divorce in the Hillsborough County Superior Court, State of New Hampshire. *Johnson v. Coe*, Docket No. M–85–1157. An answer and cross-libel was filed on behalf of Cathy Coe.

On September 26, 1985, after a hearing, the marital master recommended temporary orders setting forth the debt obligations that were to be carried by each party pending the entry of a final decree of divorce. The temporary orders provided, *inter alia*, that Peter Johnson would pay the mortgages, liens, encumbrances, and all other necessary expenses on the parties' real estate holdings. *Johnson v. Coe*, Docket No. M–85–1157, *Temporary Orders* at ¶ 3 (Sept. 26, 1985) (Exhibit A to Plaintiff's Motion for Summary Judgment). The master also recommended that Peter Johnson would make the car payments and maintain Cathy Coe's health insurance, and that Cathy Coe would be solely responsible for her gasoline, food, clothing and horse expenses. *Id.* at ¶ s 4, 6, 8. The master's recommendations were approved by the state court and a decree was entered in accordance therewith. *Id.*, page 2 (Oct. 8, 1985).

ing discharge pursuant to section 523(a)(5) of the Bankruptcy Code, remains for determination by the Court.

During the parties' reconciliation in 1986, Peter Johnson transferred his interest in the Edgartown property to Cathy Coe [2], and Cathy Coe agreed to increase the mortgages on the marital residence in Hollis, New Hampshire. *See Johnson v. Coe*, Docket No. M–85–1157, *Divorce Decree*, pp. 2–3 (May 31, 1988) (Marital Master DalPra, Judge Dalianis) (Exhibit A to Defendant's Motion for Summary Judgment; Exhibit B to Plaintiff's Motion for Summary Judgment). The funds derived from the refinancing of the marital home in Hollis were applied to Peter Johnson's acquisition of other real estate in the Coos County area of New Hampshire, such real estate being owned solely by Peter Johnson, owned jointly by Peter Johnson and his son, or owned by corporations wholly controlled by Peter Johnson. *Id.*, pp. 5–8. In addition, Peter Johnson applied $30,000 from the refinancing towards his own living expenses that he had incurred prior to the reconciliation. *Id.*, p. 7.

The parties were divorced by Order of the Hillsborough County Superior Court on February 10, 1988. The Divorce Decree was summarily affirmed by the New Hampshire Supreme Court on May 11, 1988, and became final on May 31, 1988. The Divorce Decree expressly provided that "Each party is employed full time and capable of supporting himself/herself. Therefore, no alimony obligation shall be imposed upon either party." *Johnson v. Coe*, Docket No. M–85–1157, *Divorce Decree*, p. 9, ¶ 2 (May 31, 1988). The marital master noted that "The major problem for disposition at the final hearing was division of property." *Id.*, p. 1. However, within this context the marital master proceeded to consider the financial circumstances of each party to the divorce, as well as the contributions by each party to the procurement of the various property holdings. A support affidavit was filed by Peter Johnson at the time of the divorce hearing, in accordance with New Hampshire practice. The affidavit indicated that Peter Johnson earned a gross income of $11,400 per month, and that Cathy Coe earned a net income of $2,500 per month. *Johnson v. Coe*, Docket No. M–85–1157, *Support Affidavit*, p. 4 (December 15, 1987) (Exhibit C to Plaintiff's Motion for Summary Judgment).

The Divorce Decree made the following rulings that are pertinent to this bankruptcy case:

> The jointly owned family residence located at 11 Toddy Brook Road, Hollis, is awarded to Cathy, free and clear of any right, title, or interest on the part of Peter. Within 30 days of the effective date of this order, Peter shall execute whatever documents are necessary to transfer his interest in said real estate to Cathy.[3]

> I also find that it would be fair and equitable to reduce the encumbrance on the Hollis Property to a level which fairly reflects the state of the mortgage at the time of the refinance (approximately $70,000).[4]

> With respect to the mortgage and note encumbering the Hollis, New Hampshire property, Peter shall assume $160,000.00 of the encumbrance. To do this, he shall take whatever steps are necessary to remove that amount from the encumbrance with respect to the Hollis, New Hampshire property. He shall refinance the Notch House or the McLane [sic] land, or sell either one or the other, in order to accomplish this purpose. This shall be accomplished on or before August 1, 1988. Until that time, Peter shall be responsible to pay to Cathy the sum of $1,500.00 monthly, to be applied against

---

**2.** In 1988, the Edgartown property had a fair market value of approximately $150,000, and an outstanding mortgage encumbrance of approximately $40,000. *Johnson v. Coe*, Docket No. M–85–1157, *Divorce Decree*, p. 6 (May 31, 1988). The mortgage payment on the property was $495.49 per month, *Johnson v. Coe*, Docket No. M–85–1157, *Transcript of Hearing on Petition to Attach*, p. 20 (July 26, 1988), and the property usually was rented for approximately $500 per month during the non-summer seasons. *Id.*, p. 24.

**3.** *Johnson v. Coe*, Docket No. M–85–1157, *Divorce Decree*, p. 9, ¶ 4 (May 31, 1988) (Marital Master DalPra, Judge Dalianis).

**4.** *Id.*, p. 8.

the monthly mortgage on the Hollis property. It is the intent of this provision to return the amount of the encumbrance relative to the Hollis property to that level of March, 1986, just prior to the refinancing.[5]

As an adjunct of the divorce proceeding, Cathy Coe sought an attachment of Peter Johnson's interest in the "Notch House" and the "McLean property" in the amount of $160,000, and filed motions for enforcement and contempt with the Hillsborough County Superior Court, due to Peter Johnson's failure to make timely payments in accordance with the temporary orders and, subsequently, with the Divorce Decree. These actions were taken by Cathy Coe in April of 1988. The state court (Judge Goode) held a two-day hearing on the pending motions. Then, ruling from the bench, the state court deferred ruling on the petition to attach, ordered Peter Johnson to immediately comply with the mandates of the Divorce Decree, and required Peter Johnson to pay $11,463.69 for the arrearages. *See Johnson v. Coe,* Docket No. M–85–1157, *Transcript of Proceedings before Judge Goode,* p. 36 (July 26, 1988) (Exhibit B to Plaintiff's Complaint). The arrearages of approximately $11,400 were paid by Peter Johnson to Cathy Coe within 30 days of the state court's ruling.

On November 13, 1989, Peter Johnson filed for relief under Chapter 13 of the Bankruptcy Code. The bankruptcy case was converted to a proceeding under Chapter 11 of the Bankruptcy Code on January 24, 1990. The case was converted again, to a proceeding under Chapter 7 of the Bankruptcy Code on November 14, 1990.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

■ The issue before this Court is whether the $1,500 monthly payment that Peter Johnson was ordered to pay Cathy Coe is "maintenance" or "support", such that it is not a dischargeable debt under the Bankruptcy Code. The Bankruptcy Code provides in pertinent part that:

A discharge under ... this title does not discharge an individual debtor from any debt.... to a ... former spouse ... for alimony to, maintenance for, or support of such spouse ... in connection with a ... divorce decree.

11 U.S.C. § 523(a)(5). This provision means that any *support* or *maintenance* payments are not dischargeable debts, and Peter Johnson would still have to pay them to Cathy Coe. However, any *property settlement* made in the context of a divorce *is* dischargeable under the Bankruptcy Code, and therein lies the crux of the parties' present contentions.

The debtor argues that his obligations to Cathy Coe were in the nature of property settlements, and are therefore dischargeable in his bankruptcy case. In support of this position, Peter Johnson focuses on the pronouncement in the Divorce Decree that no alimony would be awarded. Peter Johnson claims that the monthly payments awarded by the divorce court were part of a property division or settlement between the parties.

Cathy Coe argues that, notwithstanding the divorce court's explicit language to the effect that there would be no alimony awarded, the obligations imposed by the divorce court upon Peter Johnson were in the nature of maintenance or support, and accordingly such obligations are not dischargeable under the Bankruptcy Code. Cathy Coe contends that it is clear that the state court intended for Peter Johnson to pay spousal support or maintenance until he completed the required refinancing transactions in compliance with the property awards given to Cathy Coe.

Cathy Coe asks this Court to resolve the support/property settlement issue by reading the two state court orders—the temporary orders and the Divorce Decree—as an integrated whole. She argues that although the state court awarded no alimony, when the temporary and final orders are read together they show "an integrated judicial intent to provide both inspiration and impetus for final resolution of property

---

5. *Id.,* p. 10, ¶ 6.

settlements and continuing support for the obligee spouse until such time as the properties awarded to her were sufficiently unencumbered for her to support them with her own earnings." *Plaintiff's Motion for Summary Judgment,* p. 5 (Jan. 3, 1992).

Cathy Coe also reports that in October of 1988 Peter Johnson borrowed $275,000 from Walter R. Margerison. (See Motion for Relief filed by Walter Margerison in this bankruptcy case on July 20, 1990.) To secure his obligation on the promissory note, Peter Johnson granted a blanket mortgage to Mr. Margerison on eleven properties, including the Edgartown and Hollis properties that had been awarded to Cathy Coe by the Divorce Decree in May of 1988. When Peter Johnson filed bankruptcy in November of 1989, he listed the debt to Walter Margerison as $317,052.39. Cathy Coe argues that if this Court finds the debt to her to be dischargeable, then fraud will have been successfully wrought, because Peter Johnson further encumbered the property awarded to Cathy Coe, rather than reducing the debt as required by the state court, and obtained cash for his own purposes by doing same, without paying any of it to Cathy Coe.

■ With regard to the request to consider the two orders as an integrated whole, I ruled during the hearing on this matter, incorporated herein by reference, and reiterated at this point, that once the final Divorce Decree was issued, the temporary orders were no longer controlling. Nevertheless, the continuity of the state court's intent with respect to the payment of the Hollis mortgage is relevant. In the temporary orders, the state court required Peter Johnson to pay all of the monthly mortgage on the Hollis property. In the final Divorce Decree, the state court required the Hollis property to be transferred in its entirety to Cathy Coe less $160,000 of the mortgage encumbering same within one month of the decree, and that Peter Johnson pay $1,500 to Cathy Coe until he complied with the transfer of property and reduction of the encumbrances thereon.

The significance of the $1,500 figure that the state court denominated for Peter Johnson to pay Cathy Coe is evidenced by the following facts. The monthly mortgage on the Hollis property at the time of the divorce was approximately $2,300. *See Transcript of Hearing on Petition to Attach,* p. 20 (June 28, 1988). Cathy Coe's monthly income at that time was $2,500. *See Support Affidavit of Peter Johnson* (Dec. 15, 1987). If the Hollis property had remained at a mortgage level of $70,000, the monthly mortgage payment would have been approximately $680. *See* Mortgage Tabulation (Exhibit A to Plaintiff's Supplemental Memorandum of Law). The difference between the monthly mortgage payment of $2,300, on a mortgage balance of approximately $220,000, and the monthly mortgage payment of $680, on a mortgage balance of approximately $70,000, is $1,620, which is approximately the amount of the contribution mandated from Peter Johnson. This is no coincidence. The state court apparently did its math and determined that, because Cathy Coe would have only had to pay approximately $680 per month to keep a roof over her head had the mortgage balance remained at $70,000, and because the mortgage balance was increased to $220,000 solely for the benefit of Peter Johnson [6], that until Peter Johnson reduced the balance of the encumbrance on the Hollis property to a level sustainable by monthly payments of $680, i.e. $70,000, he would have to make monthly payments on the mortgage to make up the difference

---

**6.** As noted previously in this Memorandum Opinion, *supra* p. 211, the funds derived from the refinancing of the Hollis property during the parties' reconciliation in 1986 were applied to Peter Johnson's acquisition and/or disencumbering of real estate in northern New Hampshire, in which Cathy Coe had no property interest subsequent to the divorce. *See also Divorce Decree,* pp. 7–8 ("In April 1986, a mortgage on the Hollis property was taken out in the amount of $230,000.... The end result of this refinance is that the Notch House, in which Peter resides, is unencumbered.") and *Support Affidavit of Peter Johnson,* p. 5 (Dec. 15, 1987) (Lists manner of ownership of northern New Hampshire properties, indicating no ownership interest by Cathy Coe. Also lists encumbrances on the parties' residences as follows: Encumbrances on Notch House: "None"; Encumbrances on Hollis property: "$225,000".)

between $680 and the total monthly mortgage payment, i.e. $1,500.

Additionally, Judge Goode's finding in July of 1988, two months after the entry of the Divorce Decree, that Peter Johnson was approximately $11,400 in arrears on his obligations to Cathy Coe evidences a continuing intent by the state court that Peter Johnson pay some form of monetary support or maintenance to Cathy Coe. The July 1988 order constitutes a recognition by the state court that the intent of the provision in the Divorce Decree was to provide continuing maintenance or support to Cathy Coe until the earlier of two triggering events: either the payment in full of $160,000 to Cathy Coe by Peter Johnson, or Peter Johnson's reduction of the debt obligation on the Hollis property to a level of $70,000 by selling or refinancing the properties that were awarded to him.

■ In determining whether an obligation is dischargeable as a property settlement or whether it is non-dischargeable as spousal support or maintenance, this Court is not bound by a state court's characterization of a particular award in a Divorce Decree. *In re Ploski,* 44 B.R. 911, 913 (Bankr.D.N.H.1984), *citing 3 Collier on Bankruptcy* § 523.15(1), p. 523–117 (15th Ed.1991). Unfortunately, as is often the case, the possibility of a future bankruptcy was not considered at the time of the divorce and the state court therefore did not indicate whether the $1,500/$160,000 payment was or was not in the nature of maintenance or support.

■ In deciding the nature of obligations set forth in a divorce decree, I am guided by the analysis provided by the Sixth Circuit Court of Appeals in *In re Calhoun,* 715 F.2d 1103 (6th Cir.1983). The Court stated:

> [T]he initial inquiry must be to ascertain whether the state court or the parties to the divorce *intended* to create an obligation to provide support through the

assumption of the joint debts. If they did not, the inquiry ends there.... In making this determination the bankruptcy court may consider any relevant evidence including those factors utilized by state courts to make a factual determination of intent to create support.

*In re Calhoun,* 715 F.2d 1103, 1109 (6th Cir.1983) (emphasis in original). The Court summarized some of the factors considered by state courts:

> [T]he nature of the obligations assumed (provision of daily necessities indicates support); the structure and language of the parties' agreement or the court's decree; whether other lump sum or periodic payments were also provided; length of the marriage; the existence of children from the marriage; relative earning powers of the parties; age, health and work skills of the parties; the adequacy of support absent the debt assumption; and evidence of negotiation or other understandings as to the intended purpose of the assumption.

*Id.* at 1108, n. 7.[7] The Court then continued with the second part of its analysis:

> This finding of intent does not, however, control the ultimate issue of whether the assumption of joint debts was actually in the nature of support for purposes of federal bankruptcy. If the bankruptcy court finds, as a threshold matter, that assumption of the debts was intended as support it must next inquire whether such assumption has the *effect* of providing the support *necessary* to ensure that the daily needs of the former spouse and any children of the marriage are satisfied. The distribution or existence of other property, for example, may make the continuing assumption of joint debts unnecessary for support, as might drastic changes in the former spouse's capabilities for self-support. Substance must prevail over form.

*Id.* at 1109.

■ Applying the *Calhoun* analysis to this case, particularly the factors that the

---

**7.** This Court has previously considered those factors that state courts may use to determine whether or not maintenance or support is necessary. *See In re Ploski,* 44 B.R. 911, 913 (Bankr. D.N.H.1984), *citing Benz v. Nelson,* 16 B.R. 658, 660–661 (Bankr.M.D.Tenn.1981). The *Benz* factors are similar, if not identical, to those set forth in the discussion of state court considerations in the *Calhoun* case.

state court might have considered, I note the following:

1. Peter Johnson's monthly income was approximately four times greater than Cathy Coe's monthly income at the time of the divorce decree.

2. The $1,500 monthly payment was tied directly to a debt, the Hollis property mortgage, but it was not related to any property as such, and it was intended to be finite in amount and to shift the burden of the debt only until the property settlement was completed.

3. There are no children from the marriage, the marriage lasted more than ten years, and all of the properties were acquired during the marriage.

4. No portion of the refinanced debt incurred during the parties' brief reconciliation in 1986, which is the mortgages encumbering the Hollis property, was incurred for the benefit of Cathy Coe. Rather, it was used exclusively to benefit Peter Johnson: approximately $200,000 was used to purchase or disencumber properties in northern New Hampshire, in which Cathy Coe has no property interest subsequent to the divorce, and $30,000 of the refinanced debt was used directly for the living expenses of Peter Johnson.

5. The divorce decree reflects an intent by the state court that it be financially possible for Cathy Coe to remain in the marital home until the property settlements were final and the debt obligation on the Hollis property was reduced to a level that she could afford.

6. The obligation was subject to contempt proceedings: The two-day hearing before Superior Court Judge Goode in July of 1988 concerned post-divorce motions to enforce the provisions of the divorce decree. Although the court did not enter an order of contempt, it did direct Peter Johnson to cure arrearages on his obligations under the divorce decree.

A review of the Divorce Decree provides further indicia of the state divorce court's intent with regard to the $1,500 monthly payment. The Divorce Decree is ten pages long, and is almost entirely devoted to an analysis of the relative contributions of the parties to the acquisition and maintenance of the marital estate. The Divorce Decree also focuses extensively on the degree of refinancing that occurred on the Hollis property (the marital home), and who benefitted from such refinancing. The divorce court attempted to make an equitable division of the marital estate, and to do so it needed to determine the dates of the financial obligations that attached to each property, and the use of the monies derived from any refinancings. The divorce court finally concluded that it would be equitable to give Cathy Coe the Hollis property, among other assets, and that the Hollis property should be returned to her in the financial condition that it was in prior to the parties' reconciliation in 1986, when Peter Johnson refinanced the property, primarily if not solely for his benefit.

The financial debt and income level for Cathy Coe before, during, and after her reconciliation with Peter Johnson in 1986 illustrate that she could not pay the mortgage on the Hollis property at the time of the parties' divorce in 1988 without monetary contribution from Peter Johnson. The mortgage payment amounts and obligations on the Hollis property are as follows:

After the parties' separation in 1985, and before their reconciliation in 1986: Peter was paying the mortgage and encumbrances, which average $2,300 per month. *See Temporary Orders,* ¶ 3 (Sept 26, 1985); *Transcript of Hearing on Petition to Attach,* p. 20 (June 28, 1988).

At time of parties' reconciliation in 1986: The total mortgage debt encumbering the Hollis property was $70,000 (*See Divorce Decree,* p. 8 (May 31, 1988)); the refinancing of Hollis property in April 1986 in the amount of $230,000, increasing the total mortgage debt to $300,000 (*See Divorce Decree,* p. 7).

At time of parties' divorce in 1988: Total mortgage encumbering Hollis property is $220,000, and monthly mortgage payment is $2,300 (Plaintiff's Supplemental Memorandum of Law, p. 2, ¶ 4 (March 6, 1992)); Peter Johnson required to assume $160,000 of the encumbrance on the Hollis property by August 1, 1988, in order to return the mortgage level to where it was prior to the 1986 refinancing, and to pay Cathy Coe $1,500 per month until he has assumed $160,000 worth of the encumbrance on the property. (*See Divorce Decree*, p. 10, ¶ 6). The $1,500 was intended by the divorce court "to be applied against the monthly mortgage on the Hollis property." *Id.*

The parties' incomes at the time of their divorce in 1988 were $11,400 per month for Peter Johnson, and $2,500 per month for Cathy Coe, according to data set forth in Peter Johnson's "Support Affidavit" dated December 15, 1987. Cathy Coe claims that, had Peter Johnson complied with the state divorce court's order, and reduced the mortgage encumbrance to $70,000, the monthly mortgage payment would have been approximately $680.00, assuming an annual interest rate of 10.1 percent. (*See* Plaintiff's Supplemental Memorandum of Law, p. 2, ¶ 6 (March 6, 1992)).

The above monetary data clearly indicates that, but for Peter Johnson's payment of $1,500 per month on the Hollis mortgage until it is paid down to the $70,000 level, Cathy Coe would need to expend her entire monthly income just to keep a roof over her head. Obviously, if Cathy Coe did pay the entire monthly mortgage payment, she would have no money with which to pay for other necessities of life, such as food, electricity, water, and heat. Cathy Coe had no realistic ability to pay the mortgage on the Hollis property without Peter Johnson's contribution of $1,500 per month, until and unless the mortgage debt was reduced. Even assuming, arguendo, that Cathy Coe derived additional monthly income of $500 from rent on the Edgartown property, she would at best have surplus cash of $500 after the mortgage payment with which to purchase food and other essentials. The $500 would not

have been sufficient. Because the $1,500 monthly payment by Peter Johnson, when added to Cathy Coe's payment, would make the mortgage on the Hollis property affordable to Cathy Coe, thereby allowing her to retain housing—a necessity of life—I find such payment to be in the nature of "maintenance" or "support" for Cathy Coe.

I find that this maintenance or support obligation imposed by the final Divorce Decree with regard to the Hollis property was for Peter to pay $1,500 monthly towards Cathy's living expense requirements until the contemplated paydown of the mortgage on the Hollis property, the marital home, to the $70,000 level. This was the amount of the mortgage immediately prior to the brief reconciliation of the parties in 1986. I further find that during the parties' reconciliation in 1986, Peter Johnson convinced Cathy Coe to allow the Hollis property to be mortgaged up to approximately $225,000 so that he could use the money to acquire unencumbered property in northern New Hampshire.

## CONCLUSION

Based on the foregoing law and evidence, including essentially the entire record of the divorce proceedings in the state court, and considering the circumstances of the parties, this Court concludes that the payments that the divorce court ordered Peter Johnson to Cathy Coe were for her maintenance or support pending his reduction of the mortgage encumbrance on her residence.

Accordingly, I conclude that the state court Divorce Decree with regard to these parties was, in effect, awarding maintenance or support payments by Peter Johnson to Cathy Coe until the mortgage on the Hollis property was paid down to $70,000. Therefore, despite the state court finding that no "alimony" as such would be awarded in this divorce, I find that the award of $1500 a month is in fact a spousal "maintenance" or "support" award and, consequently, non-dischargeable in Peter Johnson's bankruptcy case pursuant to section 523(a)(5) of the Bankruptcy Code.

In addition, because Peter Johnson essentially blocked the paydown of the mortgage on the Hollis property by mortgaging his other properties, his obligation to pay $1500 per month to Cathy Coe is deemed to continue until and unless he pays down the Hollis mortgage by $148,-536.31, which is the original obligation of $160,000 less the $11,463.69 that he has already paid.

This determination means, as a matter of New Hampshire law (RSA 458:32), that the parties may go back to the state court and seek any modification of the spousal maintenance or support award that may be appropriate, taking into consideration the debtor's income and liability situation following his bankruptcy discharge. The restraint imposed by the automatic stay is hereby lifted to the extent necessary for the parties to return to the state court for modification proceedings, should either party so choose. *In re Nowac,* 78 B.R. 638, 639–640 (Bankr.N.H.1987).