In re Donald PIDGEON, Debtor.

Barbara PIDGEON, Movant,

v.

Donald PIDGEON, Respondent.

CM No. 93–0382.
Bankruptcy No. 93–10128.

United States Bankruptcy Court,
D. New Hampshire.

May 13, 1993.

David Copithorne, Laconia, NH, for debtor.

J. Campbell Harvey, Harvey & Mahoney, PA, Manchester, NH, for Barbara Pidgeon.

Lawrence P. Sumski, Trustee, Amherst, NH.

Geraldine Karonis, U.S. Trustee, Manchester, NH.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

This contested matter came on for a hearing before the Court on April 22, 1993 on the motion of Barbara Pidgeon ("movant"), wife of the debtor, for relief from the automatic stay pursuant to 11 U.S.C. § 362(d) as well as the debtor's objection thereto. This is a chapter 13 proceeding. The following constitutes the Court's findings of fact and conclusions of law in accordance with Fed.R.Bankr.P. 7052.[1]

## I. FACTS

The parties are locked in what appears to be an acrimonious divorce action which was commenced by the debtor on or about March of 1992. The movant counter-filed for divorce and sought custody, child support, alimony, and an equitable division of the marital estate. According to the motion for relief, a temporary order was issued on August 11, 1992 which enforced an agreement between the parties entered into on or about April 15, 1992. According to the movant, the temporary order requires the debtor to make child support payments in the amount of $750 per month per child

and also to make the mortgage, tax, and insurance payments thereon. The movant contends the debtor has defaulted on the mortgage payments, both pre and post petition, and now owes in excess of some $13,-000, plus legal costs and late fees to the mortgagee.

The motion characterizes the debtor's obligation to make the mortgage, tax, and insurance payments as being in nature, and reality, child support obligations. She reaches this conclusion on the basis that the debtor's monthly child support obligation is approximately only 60 percent of the normal New Hampshire child support guideline amount for an obligor with the debtor's reported income. The movant did not offer any evidence as to what are the New Hampshire child support guidelines, or their relevance to the instant motion, but nonetheless contends that debtor's agreement to make the mortgage, tax, and insurance payments was an agreement for child support obligation undertaken by the debtor so that their minor children could continue to live in their current home.

The stay relief is requested so that the movant can proceed against the debtor in state court to obtain the following relief: (1) a determination as to the nature of the debtor's pending obligations to pay the home mortgage payments and as to his accumulated arrearage relating thereto; (2) a determination as to the respective property rights of the parties as to the marital home; (3) to seek enforcement of the debtor's support obligations; and (4) to allow her to continue her divorce action against the debtor.

## II. APPLICABLE LAW

Section 362(b)(2) of the Bankruptcy Code ("Code") provides in relevant part:

The filing of a petition ... does not operate as a stay—(2) under subsection (a) of this section, of the collection of alimony, maintenance, or support from property that is not property of the estate;

Section 541 of the Code, "Property of the Estate," provides in relevant part:

---

**1.** This memorandum opinion sets forth in detail the reasoning supporting the Court's bench rul-

ing of April 22, 1993 granting the motion for stay relief.

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor as of the commencement of the case.

Section 1306 of the Code, "Property of the Estate," relating to chapter 13 proceedings, modifies the general prescription of section 541, and provides in relevant part:

Property of the estate includes, in addition to the property specified in section 541 of this title—(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and

(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

(b) Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.

Code section 1322, "Contents of plan," provides in relevant part:

(a) The plan shall—

(1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan;

. . .

### III. DISCUSSION

■ At the stay relief hearing movant's counsel represented to this Court that as a general rule, the New Hampshire state courts will not act on marital matters absent an order from this Court that the automatic stay has been lifted. The vast majority of cases in this court are chapter 7 proceedings and the plain language of Code section 362(b)(2) expressly excepts actions to collect alimony, maintenance, or support from the effect of the automatic stay.

Since a chapter 7 debtor's future income is not property of the estate, 11 U.S.C. § 541, it is simply unnecessary to obtain an order of relief from the automatic stay in order to maintain a collection action against a recalcitrant chapter 7 debtor's post-petition earnings.

■ Having stated the general rule, it is now necessary to observe that a chapter 13 proceeding represents an exception. This is so because a chapter 13 debtor's future income is property of the estate. 11 U.S.C. § 1306. Since the "collection of alimony, maintenance, or support" exception to the automatic stay is qualified by the phrase " . . . from property that is not property of the estate," and since a chapter 13 debtor's post-petition income is property of the estate, stay relief is required in a chapter 13 proceeding. *Carver v. Carver*, 954 F.2d 1573, 1577 (11th Cir.1992).

In any event, all the above is by way of background to aid lawyers and state court marital masters and judges to know when an order lifting the automatic stay is or is not required. Beyond that, this case, in its current procedural posture, presents its own unique problem which can best be described as a classic of circularity.

A chapter 13 plan may not be confirmed until the Court determines that all of the debtor's disposable future income has been subjected to the control of the chapter 13 trustee to the extent necessary to effect the plan. 11 U.S.C. § 1322(a)(1). The above determination requires knowing what a chapter 13 debtor's actual expenses are. However, given the pending divorce proceeding and the related bankruptcy question of whether any obligations are dischargeable under 11 U.S.C. § 523(a)(5), this debtor's actual expenses cannot be determined until some court, either the marital court or this Court, determines such issues between the debtor and his estranged wife. It should be noted that no *final* orders have been entered in the marital court as to any of these issues nor has there been any final decree of divorce.

■ What the Court has before it then is a case of potential judicial gridlock. To

break the gridlock, and in view of the increasing frequency with which this Court is called on prematurely to review determinations made in the state courts on marital matters, the Court will grant the motion for relief so the movant can obtain her requested relief in the state court from whence she came.

■ I reach this conclusion for two reasons. In the first instance, 28 U.S.C. § 1334, "Bankruptcy cases and proceedings," provides for this result. Subsection (b) provides:

> (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have *original but not exclusive jurisdiction over all civil proceedings* arising under title 11, or arising in *or related to cases under title 11.* (Emphasis supplied)

What this means is that state courts have concurrent jurisdiction with bankruptcy courts to make the 523(a)(5) dischargeability determination in appropriate cases where necessary to resolve circularity problems. *In re Smith,* 125 B.R. 630 (Bankr. E.D.Ok.1991) (citing *In re Littlefield,* 17 B.R. 549, 551 (D.Me.1982)); *Hopkins v. Hopkins,* 487 A.2d 500, 503 (R.I.1985). While not always true or practicable, marital matters of this kind are more properly decided by the marital master or judge who approved the parties' stipulation of divorce or entered a decree.

I observed this very policy consideration in *Stanton v. Bellevance,* 1991 WL 519726, ADV. No. 91–1111 (Bankr.D.N.H.1991) where I wrote:

> This Court has exercised comity with regard to the state court by not unnecessarily going behind the state court determination where the state court explicitly

addressed the question of support; ... It has always been my view that this Court should defer to the marital courts for truly marital determinations of alimony and support obligations that are non-dischargeable under the Bankruptcy Code. It is also my view, however, that there is some comity owing from the state court to the Federal Bankruptcy Courts with regard to changed circumstances once a spouse or parent files a bankruptcy petition, i.e., that changed circumstance by itself in my judgment should be considered by the state court as to whether it does or does not justify any modification of existing support orders.

*Stanton,* slip op at 5.

■ This result also conforms with the Supreme Court's observation nearly a century and a half ago that where at all possible, a federal court should abstain or avoid interfering with the determinations of family law matters by the appropriate state courts. *Barber v. Barber,* 62 U.S. (1 How.) 582, 584, 16 L.Ed. 226 (1859); *see also Kirk v. Kirk,* ADV. No. 92–1066, —— B.R. —— (Bankr.D.N.H. February, 1993) (stay relief granted so that state court could determine whether provision of divorce decree requiring payment prior to sale of marital home was dischargeable); *Ellis v. Ellis,* 143 B.R. 796 (Bankr.D.N.H.1992) (stay relief granted so that non-debtor ex-spouse could proceed in state court for re-determination of alimony support obligations under previously entered divorce decree.); *Cutter v. Cutter,* ADV No. 90–1144, 1990 WL 507418 (Bankr.D.N.H. October 11, 1990) (stay relief granted so that parties disputing status of marital home could have state court review the status of its own orders relating to alimony award).[2]

---

**2.** I am aware of the recent Supreme Court decision in *Ankenbrandt v. Richards,* —— U.S. ——, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992), holding that the "domestic relations exception" to diversity jurisdiction in the federal courts, stemming from the *Barber* dictum, should be limited to prohibiting exercise of power to issue divorce, alimony and child custody decrees. The present case does not involve diversity jurisdiction nor does it involve any abandonment of jurisdiction in any event. The granting or denial of relief from the bankruptcy stay to permit litiga-

tion to proceed in another forum is expressly authorized by Congress. 11 U.S.C. § 362(d). Moreover, the granting of the relief in the present case because of the "circularity" problem, while arguably a "partial abstention" in its effect, has this Court retaining jurisdiction to complete the federal purpose upon determination by the state court of the relevant state law issues. This possibility was expressly recognized by the Supreme Court. *Ankenbrandt v.*

28

In passing, I note that there are indeed instances when mixed questions of bankruptcy and marital law will not be sent back to the state court masters and judges. When and where appropriate, this Court has and will make the 523(a)(5) and any other necessary, related determinations. *See, e.g., Johnson v. Johnson,* 144 B.R. 209 (Bankr.D.N.H.1992); *In re Keniston,* 85 B.R. 202 (Bankr.D.N.H.1988); *In re Nowac,* 78 B.R. 638 (Bankr.D.N.H.1987); *In re Gibson,* 61 B.R. 997 (Bankr.D.N.H.1986); *In re Winders,* 60 B.R. 746 (Bankr.N.D.Ia. 1986) (Yacos, J., sitting by designation); *In re Keniston,* 60 B.R. 742 (Bankr.D.N.H. 1986); *In re Ploski,* 44 B.R. 911 (Bankr. D.N.H.1984).

In closing, I note that federal law controls the state court marital master or judge's determination of whether a particular debt is dischargeable under 11 U.S.C. § 523(a)(5). *In re Seibert,* 914 F.2d 102, 106 (7th Cir.1990) (citing *In re Williams,* 703 F.2d 1055 (8th Cir.1983)); *In re Winders,* 60 B.R. 746, 748 (Bankr.N.D.Ia.1986) (Yacos, J., sitting by designation).

For all the foregoing reasons, the motion for relief from the automatic stay is granted, as provided in the separate Order. After the state court fully and finally decides the nature of the this debtor's obligations with respect to the mortgage, tax, and insurance payments on the marital residence, as well as any and all other contested obligations, this Court will then, and only then, be in a position to make the requisite findings for the confirmability of the debtor's proposed chapter 13 plan.

*Richards,* —— U.S. at ——, footnote 8, 112 S.Ct.   at 2216, footnote 8.